UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEALTHCARE DEVELOPMENT PARTNERS LLC, | |
| Plaintiff, | No. 24 CV 12343 |
| v. | Judge Manish S. Shah |
| SIGNET HEALTH CORP., | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Healthcare Development Partners and defendant Signet Health Corporation entered into a memorandum of understanding to construct and operate behavioral health centers. After Signet suggested that it did not consider itself bound by the exclusivity provisions of the memorandum of understanding, HDP filed this declaratory judgment and anticipatory breach of contract action. Signet moves to dismiss the complaint for lack of personal jurisdiction, or, in the alternative for improper venue. For the reasons discussed below, the motion to dismiss for lack of personal jurisdiction is granted.

I.      **Legal Standard**

When a defendant challenges jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022) (citation omitted). Where the decision on jurisdiction is based solely on written materials without an evidentiary hearing, the plaintiff need only make a prima facie showing

of personal jurisdiction over the defendants. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). If the defendants submit evidence opposing the exercise of jurisdiction, the plaintiffs must also submit affirmative evidence in support of jurisdiction. *Id.* I take as true "all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Id.* (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)).

A party may also move under Rule 12(b)(3) for dismissal of an action filed in an improper venue. Fed. R. Civ. P. 12(b)(3). The plaintiff bears the burden of proving that venue is proper. *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F.Supp.2d 781, 787 (N.D. Ill. 2013) (citing *Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981)). A court reviewing a Rule 12(b)(3) motion to dismiss accepts all facts alleged in the complaint as true, unless contradicted by an affidavit. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016). A court "may look beyond the mere allegations of a complaint, and need not view the allegations of the complaint as the exclusive basis for its decision." *Id.*

## II.    Background

Healthcare Development Partners, LLC is an Illinois limited liability company. [1] ¶ 5.[1] Signet Health Corporation is a Texas corporation with its principal place of business in Denton, Texas. [1] ¶ 6. Sometime in 2019, Signet and HDP began

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the complaint and exhibits to the complaint, [1], [1-1], [1-2]; the evidence submitted by the defendants in opposition to the exercise of jurisdiction, [9-1], [9-2], [9-3], [14-1], and [14-2]; and the evidence submitted by plaintiff in response and in support of the exercise of jurisdiction, [12-2], [12-3], and [13].

2

negotiating a memorandum of understanding that outlines an agreement to collaborate on the development, construction, and operation of behavioral health centers. [1] ¶ 7. The first in-person meeting of the parties took place at Signet's office in Denton, Texas. [14-1] ¶ 6. Another meeting took place in Phoenix, Arizona. [14-1] ¶ 7. A third in-person meeting took place in Chicago and Park Ridge, Illinois, where the terms of the memorandum of understanding were finalized. [13] ¶¶ 3–5. Eventually, HDP and Signet executed a memorandum of understanding, outlining the parties' roles to finance, build, and operate behavioral health centers. [1] ¶ 7; [1-1].

Following through on the memorandum of understanding, HDP secured potential construction sites and financing options. [1] ¶ 10. In March 2020, the COVID-19 pandemic caused construction material costs to surge and interest rates to effectively double. [1] ¶ 11. HPD continued to try to source financing. [1] ¶ 12. Eventually, two development sites were chosen in Alliance, Texas, and Olathe, Kansas. [1] ¶ 13. Caliber Services, LLC agreed to provide financing for the developments. [1] ¶ 14. Caliber bought the land for the development sites in Texas and Kansas in 2023. [1] ¶ 14. Construction on the sites was slated to begin between September and December of that year. [1] ¶ 15. However, in late 2023, Caliber stopped development, seemingly due to financial setbacks. [1] ¶ 16. The Texas and Kansas projects remain at a standstill. [1] ¶ 17.

In August 2024, Signet told HDP it no longer considered itself bound by the exclusivity provisions of the memorandum of understanding, and that it intended to

pursue other opportunities to construct, own, and manage hospitals outside of the parties' agreement. [1] ¶¶ 18–19. HDP attempted to negotiate a one-off agreement to allow Signet to develop a hospital with another operator, but Signet claimed that HDP had breached the exclusivity provisions of their agreement, and it was no longer bound by the contract. [1] ¶¶ 20–22. HDP filed this suit for anticipatory breach and declaratory judgment. [1].

### III. Analysis

#### A. Personal Jurisdiction

Defendant Signet argues that the court lacks personal jurisdiction over it. "A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003). The Illinois long-arm statute confers personal jurisdiction if "permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). The Illinois long-arm statute is "coextensive with the Federal Constitution's Due Process Clause." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020); *see also Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (noting that "there is no operative difference" between the Illinois and United States Constitutions for purposes of limiting personal jurisdiction). The question is whether exercising personal

jurisdiction on defendant "comports with the limits imposed by federal due process." *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

Federal due process requires that the defendant have minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). There must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For cases arising out of contract disputes, "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *Purdue Rsch.*, 338 F.3d at 781 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

Some factors Illinois courts use to determine whether personal jurisdiction exists over an out-of-state defendant in a contract dispute include "(1) who initiated the transaction; (2) where the contract was negotiated; (3) where the contract was formed; and (4) where performance of the contract was to take place." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015) (quoting *Estate of Isringhausen ex rel. Isringhausen v. Prime Contractors & Assocs., Inc.*, 378 Ill.App.3d 1059, 1065–66 (4th Dist. 2008)). A choice-of-law provision is a relevant, though not determinative, factor in establishing jurisdiction. *Isringhausen*, 378 Ill.App.3d at

1066. The minimum contacts analysis is not limited to these factors; the inquiry must be "highly realistic," and includes not only those factors but also the terms of the contract, the "contemplated future consequences of those agreements," and the parties' actual course of dealing. *Madison Miracle Prods., LLC v. MGM Distrib. Co.*, 2012 IL App. (1st) 112334, ¶ 62 (1st Dist. 2012); *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 493 (7th Cir. 2014).

These "minimum contacts" fall into two categories: "specific" and "general" jurisdiction. *J.S.T. Corp.*, 965 F.3d at 575. General jurisdiction requires the "defendant's connection to the forum" state be "so continuous and systematic as to render [it] essentially at home." *Id.* (quoting *Goodyear*, 564 U.S. at 919). Specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quoting *Goodyear*, 564 U.S. at 919). HDP asserts both general and specific jurisdiction.

1. *General Jurisdiction*

A "court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb*, 582 U.S. at 262 (emphasis in original). "Only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). The defendant must have "continuous and systematic general business contacts" with the forum district, and "such extensive contacts with the [forum] state that [the defendant] can be treated as present in the state for essentially all purposes." *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421,

425–26 (7th Cir. 2010); *see also Daimler*, 571 U.S. at 133 n.11 (noting that for general jurisdiction to exist, the corporation's affiliation with the forum state must be "comparable to a domestic enterprise in that State").

HDP claims that Signet is subject to general jurisdiction because it is registered to do business in Illinois, has a registered agent in the state, holds itself out as a nationwide company, and is actively recruiting employees in Illinois.

Signet is not actively hiring in Illinois. HDP's screenshot showing that Signet Health has a webpage for "Illinois Jobs" is accurate in the sense that the webpage exists. But HDP left out an important part of the screenshot: that there are 0 jobs available in Illinois. And as Signet points out, on the main Signet jobs website, there is no option to even choose Illinois in the drop-down menu of locations where jobs are available. https://www.signethealthjobs.com/ (last accessed Mar. 14, 2025). Signet's current chairman of the board and former Chief Executive Officer said that Signet does not employ anyone in Illinois, nor is it recruiting Illinois employees. [14-1] ¶ 14. HDP's evidence does not show that Signet has or is actively recruiting employees in Illinois. This cannot form the basis for general jurisdiction.

Moreover, being a "nationwide company" does not mean that a company subjects itself to general personal jurisdiction in every state that it operates in—the company must essentially be "at home" in the forum state. Even where a company has "extensive and deliberate" contacts with a forum state in the form of marketing and sales, and contracts with customers in the forum state, general jurisdiction does

not apply. *uBid*, 623 F.3d at 426. Simply because a business has some dealings in a forum state does not mean it is "at home" there for purposes of general jurisdiction.

Finally, registering to do business in a state or designating a registered agent for service of process is not enough to make a corporation "at home" there. *See Leibovitch v. Islamic Republic of Iran*, 188 F.Supp.3d 734, 749 (N.D. Ill. 2016) (collecting cases); *see also, e.g.*, *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990). The Illinois courts have similarly held that the "designation of an Illinois registered agent is not an independently determinative factor, however, in determining whether a foreign corporation is doing business in Illinois." *Alderson v. Southern Co.*, 321 Ill.App.3d 832, 853 (1st Dist. 2001). The standard for general jurisdiction as set forth in *Daimler* does not allow for general jurisdiction where only an agent sits; HDP needed to show that Signet was "at home" in this district. It has not done so. I cannot exercise general jurisdiction over Signet.

    2.    *Specific Jurisdiction*

Specific jurisdiction "focuses on the sufficiency of the defendant's contacts with the forum that 'also give rise to the liabilities sued on.'" *Curry*, 949 F.3d at 395 (quoting *Int'l Shoe*, 326 U.S. at 317). Specific jurisdiction analyzes the connection between the defendant, the forum, and the underlying controversy. *Id*. The defendant's "suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. It is a "defendant-focused" inquiry. *See id.* Jurisdiction is proper when the defendant "take[s] 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum

8

State.'" *Ford Motor Co.*, 592 U.S. at 359 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Burger King*, 471 U.S. at 475.

HDP contends that Signet is subject to specific jurisdiction in Illinois because (1) Signet actively hires and engages in marketing in Illinois, (2) Signet holds itself out as a nationwide business, (3) Signet entered into a contractual relationship with an Illinois-based LLC, and (4) Signet's then-president traveled to Illinois to negotiate at least part of the memorandum of understanding.

First, as explained above, HDP is wrong about Signet's recruitment of employees. In any case, "in a breach of contract case, it is only the dealings *between the parties in regard to the disputed contract* that are relevant to minimum contacts analysis." *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012) (quoting *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997)). There is no connection between whether Signet hires employees in Illinois and the dealings between HDP and Signet in this case. This fact cannot confer personal jurisdiction.

Second, HDP says that because Signet holds itself out as a nationwide business and specifically states that it hires Illinois residents, it is subject to specific jurisdiction. That Signet markets itself as a nationwide company does not provide support for *specific* jurisdiction, which looks to *suit-related* conduct that creates a substantial connection to Illinois. *Walden*, 571 U.S. at 284. Signet's outward marketing does not relate to the disputed contract and is not a factor to consider in the specific jurisdiction analysis. *Felland*, 682 F.3d at 674.

9

HDP also argues that Signet is subject to specific jurisdiction because Signet entered into a contractual relationship with an Illinois-based LLC and Signet's then-president traveled to Illinois to finalize the parties' memorandum of understanding. Although Signet disputes that any part of the contract was negotiated or finalized in Illinois, any conflicts in the parties' affidavits must be resolved in the plaintiff's favor. *NBA Props.*, 46 F.4th at 620. HDP's manager says that Signet's president came to Chicago and met with him in both Chicago and at the manager's home in Park Ridge, Illinois, where they "worked on finalizing the memorandum of understanding" between the parties. [13] ¶ 4. Signet disputes the trip was in 2019 and for the purpose of negotiating, and says that after the parties had signed the contract, Signet's president did take a later trip to Illinois where he and HDP's manager "discussed [their] business relationship." [14-1] ¶ 13.

"[C]ontracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *North v. Ubiquity, Inc.*, 72 F.4th 221, 226 (7th Cir. 2023) (quoting *Purdue Rsch.*, 338 F.3d at 781). I look to the parties' "prior negotiations and contemplated future consequences," the terms of the contract, and the parties' actual course of dealing. *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). The defendant's presence in a state is a relevant, but not dispositive, consideration in the minimum contacts analysis. *See Heritage House Rest., Inc. v. Continental Funding Grp.*, 906 F.2d 276, 283 (7th Cir. 1990). Ultimately, a contract is "but an intermediate step serving to tie up prior business with negotiations with future consequences which themselves are the real

10

object of the business transaction." *North*, 72 F.4th at 226 (quoting *Burger King*, 471 U.S. at 479).

HDP has failed to put forth a prima facie showing of jurisdiction. Although Signet's then-president traveled to Illinois once to negotiate the contract at issue in this case, HDP has not offered any other facts to show that Signet has had any other contacts with Illinois.[2] The terms of the contract do not support personal jurisdiction: the only reference to Illinois in the memorandum of understanding is HDP's address in Chicago. As for the parties' negotiations, Signet and HDP's first meeting to negotiate the contract was held in Denton, Texas, and a second meeting was held in Arizona. There was also one meeting in Illinois. HDP has not alleged that Signet initiated the negotiations or actively solicited HDP's services. *See N. Grain Mktg.*, 743 F.3d at 493.

The "contemplated future consequences of" the memorandum of understanding and the parties' actual course of dealing show that the building and operating of the behavioral health centers would be in Texas and Kansas. *N. Grain Mktg.*, 743 F.3d at 493. HDP has not offered any facts to show that any performance by Signet was expected to be completed or was completed in Illinois. *Forrester v. Seven Seventeen HB St. Louis Redevelopment Corp.*, 336 Ill.App.3d 572, 578 (2002) ("The relevant inquiry is…whether the *defendant* performed any part of the contract in Illinois.").

---

[2] Signet's affidavit refuting the timing of its president's trip to Illinois and alleging that he went in 2022, not 2019, does not show that there were multiple trips to Illinois, but that the parties disagree about *when* the trip happened.

11

Indeed, all the evidence shows that Signet was to build and operate health centers in Texas and Kansas. "Defendant was not required to do anything at all in Illinois." *Id.*

In short, the "real object of the business transaction" had nothing to do with Illinois. *North*, 72 F.4th at 225. The majority of the negotiations, the contemplated future consequences, and the parties' course of conduct all occurred outside the state of Illinois. A single trip to Illinois to negotiate part of the memorandum of understanding is not enough to show that Signet had sufficient contacts for personal jurisdiction to attach. Signet's motion to dismiss for lack of personal jurisdiction is granted.[3]

### B. Waiver

HDP argues that Signet waived its jurisdictional defense by arguing the merits of its claim. Any discussion of the alleged breach is in Signet's factual background section of its brief and does not make any legal arguments. Signet's version of the facts does not affect my analysis of whether I have jurisdiction over it. The Federal Rules of Civil Procedure provide that a party waives a defense of lack of jurisdiction if the party fails to either "make it by motion under this rule" or "include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." Fed. R. Civ. P. 12(h)(1)(B). Signet did what it was supposed to do to avoid a waiver—it moved under Fed. R. Civ. P. 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. It did not waive the defense.

---

[3] Because I dismiss for lack of personal jurisdiction, I do not address Signet's motion to dismiss for improper venue.

Finally, although a defense may be waived by a party's conduct, that did not occur here. This case is unlike *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293 (7th Cir. 1993), cited by HDP. In that case, the defendants had litigated the merits of the case for over two and a half years without actively contesting personal jurisdiction. *Id.* at 1297. The defendants had engaged in "lengthy discovery, filed various motions and opposed a number of motions filed by" the plaintiff. *Id.* Here, Signet's very first substantive filing was this motion to dismiss for lack of personal jurisdiction. [7]. It has not filed motions based on the merits or engaged in "lengthy discovery." Signet has not acted in any way to allow an inference that it waived its jurisdictional defense.

**C.    Transfer**

When a district court finds that it lacks jurisdiction, it has the "independent obligation" to "at least consider a transfer and make some findings under [28 U.S.C.] § 1631." *North*, 72 F.4th at 228. This statute provides that whenever a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other [] court … in which the action or appeal could have been brough at the time it was filed or noticed." 28 U.S.C. § 1631.

"If a plaintiff may, on its own, refile its case in a proper forum, the interests of justice do not demand transfer." *North*, 72 F.4th at 228. There are a few forums that may be appropriate in this case. Because defendant is a citizen of Texas, it is subject to personal jurisdiction there. The statute of limitations for a breach of contract in Texas is four years from the date the contract is breached. Tex. Civ. Prac. & Rem. Code Ann. § 16.051; *Perdido Props. LLC v. Devon Energy Prod. Co., L.P.*, 669 S.W.3d 535, 555 (Ct. App. Tex. 2023).

13

The defendant also claims that Delaware is an appropriate forum because of the choice-of-law and forum-selection clauses in the operating agreements. The statute of limitations for a breach of contract claim in Delaware is three years. 10 Del. C. § 8106(a); *Wagner v. BRP Grp., Inc.*, 316 A.3d 826, 873 n.204 (Del. Ch. Ct. 2024).

Finally, should another forum apply Illinois law, Illinois has a ten-year statute of limitations on breach of written contract claims. 735 ILCS 5/13-206; *SP Consulting, Inc. v. Exceleo Bus. Consulting, Inc.*, 2024 IL App (1st) 230995, ¶ 25 n.4 (1st Dist. 2024). Because HDP may file in another forum, the interests of justice do not demand transfer, and the case is dismissed without prejudice.

### D. Subject-Matter Jurisdiction[4]

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Word Seed Church v. Village of Hazel Crest*, 111 F.4th 814, 819 (7th Cir. 2024). Healthcare Development Partners asserts jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship. It must assert "complete diversity" between itself and Signet. *City of E. St. Louis v. Netflix*, 83 F.4th 1066, 1070 (7th Cir. 2023). The citizenship of a limited liability company is the citizenship of each member. *Id*. HDP, an LLC, has not alleged the citizenship of each of its members, and so HDP has not properly alleged that it is

---

[4] Where there is a question of both personal and subject-matter jurisdiction, the court may exercise its discretion in deciding which to address first. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999). I address personal jurisdiction first for purposes of judicial economy. The parties have briefed the issue of personal jurisdiction, and even if HDP amends its complaint to satisfy complete diversity, I would still lack personal jurisdiction over defendant.

completely diverse from Signet. The case is also dismissed without prejudice for lack of subject-matter jurisdiction.

## IV. Conclusion

Defendant's motion to dismiss for lack of jurisdiction, [7], is granted. The case is dismissed without prejudice.[5] Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: March 25, 2025

---

[5] A dismissal for lack of subject-matter or personal jurisdiction is without prejudice. *Lauderdale-El v. Indiana Parole Bd.*, 35 F.4th 572, 576–77 (7th Cir. 2022).